WATSON, ET AL. LEGATEES, v. McCLANAHAN, EX'R.

1. Objection cannot be made in the appellate court, to the allowance made to an executor, unless taken in the orphans' court, and the facts set out in the record.

2. An executor is entitled to a credit for payments made to a creditor of a legatee, by his direction.

3. The testatrix, by a writing under seal, acknowledged that she had received of the executor, the sum of two hundred dollars, and promised to pay it, if convenient, during her life, but if she should fail to pay it, she directs her executors, on the death of herself, and her brother John, to pay the same, with the addition of twenty *per cent. per annum*. By her will, she recites this promise, and directs it " to be paid according to its terms." Held, that the executor could retain this money, with interest at the rate of twenty *per cent. per annum*, to the time when from the condition of the estate, the executor was enabled to realize the money, as against a legatee ; whether he could as against creditors, receive interest at the rate of *twenty per cent. per annum, quere.*

Writ of Error to the Orphans' Court of Shelby.

THE questions now presented to this court arose upon the final settlement of the accounts of the defendant with the orphans' court, and may be thus stated : 1. The intestate made and delivered to the defendant a writing in the following terms. " This day received from John M. McClanahan, two hundred dollars in cash, which I am to pay, if convenient, during my natural life, if not, I hereby on the death of myself, and on the death of my brother John, direct my executors, heirs or administrators, to pay the said John M. McClanahan, his heirs or representatives, the said sum of two hundred dollars, with twenty per cent. added thereon, value received. Witness my hand and seal. 9th March, 1841.
    (Signed)                    JANE WATSON, [seal.]"
The testatrix made her will of the same date, which was duly admitted to probate by the orphans' court of Shelby, which contains the following clause, among others : " I de-

8

sire that an obligation this day made by me, and bearing even date herewith, with conditions in it to John M. McClanahan, if not paid before the death of myself and brother John, be paid according to its terms." This will was admitted to probate in November, 1841, and the defendant was allowed on final settlement the sum of two hundred dollars advanced by him as stated, with interest thereon at the rate of twenty per cent. up to the first day of January, 1846, amounting in the aggregate to the sum of three hundred and ninety-two 22-100 dollars, although it was objected by Alexander Watson, a residuary legatee, that the transaction was usurious.

2. The defendant, as executor, received assets, and was accountable for twenty-five hundred and seventy-six 58-100 dollars assets—" the debts, disbursements and bequests " allowed him amount to the sum of thirteen hundred and ninety-nine 42-100 dollars, leaving " the sum of eleven hundred and seventy-seven 16-100 dollars to be divided between Alexander Watson and Delphy McCray, legatees of said estate." The defendant produced a receipt in full from Delphy McCray for her legacy, amounting to one half the last mentioned sum; which was received and admitted by the court as such.

Defendant also produced Alexander Watson's receipt $491 38, his notes for $18 91, and for $4 23, a judgment in favor of the executor for $25 75, and $48 31, being part of the judgment in favor of Roper and McClanahan against Watson. These last mentioned debts were obtained by the defendant as executor, with the express understanding with Alexander Watson that they should be allowed as a payment of his legacy. The aggregate of all the sums mentioned in this paragraph amount to $588 58, and were adjudged to satisfy the last named legatee in full.

The orphans' court made an allowance to the executor of $247 65, but the record does not show what item or items compose this sum, though it is supposed to be intended as a compensation for services in settling the estate.

T. D. CLARKE, with whom was E. E. BRYSON, for plaintiffs in error, made the following points:

1. The transaction is usurious, no matter what shape or

disguise it assumes, where the capital is to be returned, a profit made or loss imposed upon the necessities of the borrower, and above the statute rate of interest reserved.    Ely v. McClung, 4 Por. 128; Lloyd v. Scott, 4 Peters, 205.    The contract reserving 20 per cent. is absolutely void, to the extent at least of the excess, both by common law and by statute.    Clay's Dig. 589, § 1, 591, § 9; Carlisle and Gragg v. Gray, 10 Ala. R. 302, and cases there cited; Comyn on Usury, 62.

2.  No subsequent act or device, however formal and solemn, or subtle, can give efficacy to a contract void in its creation on account of usury, and here the stipulation for 20 per cent. is absolutely void.    Solomon v. Jones, Const. Rep. 144; Moncure v. Dermot, 13 Pet. 345; Lloyd v. Scott, *supra;* Comyn on Usury, 71; Lowe v. Waller, Doug. 740; Trumbo v. Blizzard, 6 Gill & J. 18.    Usurious securities are void not only in the hands of the original parties, but in the hands of entire strangers to the transaction.    Comyn on Usury, 64.

3.  The plaintiffs in error may avail themselves of the usury.    A privy in representation, blood, or estate, to the borrower, may take advantage of the usury, as the executor, heir, assignee in bankruptcy, even a creditor, bail to the action, though no party to the usury, alienee of a mortgagor, &c. in short, any person but a mere stranger, who has no legal interest, but officiously intermeddles.    Dix v. Van Wyck, 2 Hill, 522; Taylor v. U. Bank, 3 A. K. Marsh. 239; Jackson v. Dominick, 14 Johns. 435; Jackson v. Tuttle, 9 Cow. 233; Trumbo v. Blizzard, 6 Gill & J. 18.    Here the executor claims a sum for which there is no legal evidence, and the legatees have a right to contest the allowance, otherwise there would be no remedy.    Where there is a right there is a remedy.    The defendant in error is a creditor, not a legatee—he cannot be both, as their positions and rights are different and distinct.    The will directs a debt to be paid, does not give a legacy; but if a legatee, there is error, because—

4.  The will and bequest was a device to evade the statute of usury, and was induced by the unconscionable bargain imposed upon the necessities of the borrower.    Plumbe *v.* Cater, Cowp. 116, 793, 112; Lloyd v. Scott, *supra.*    The

bequest was but a confirmation of the illegal contract, and the other legatees, as shown above, may avoid it. McClanahan would stand as another pecuniary legatee, and would have no advantage over them or other creditors under the will. 1 Roper on Legacies, 288; Coppin v. Coppin, 2 P. Wms. 292-6.

5. The twenty per cent. could only be recovered to the time of the death of testatrix, and no interest at all on legacy for twelve or eighteen months afterwards. A legacy does not bear interest until twelve or eighteen months after death, and if it does, but eight per cent. could be recovered. Man v. McCullough, 6 Por. 507; Ire v. Golding, 5 Binn. 472; King v. Deikle, 9 S. & R. 409; Mills v. Boyden, 3 Pick. 213.

6. The allowance of $247 to the executor as such, (there being another allowance for annual services,) was exorbitant and illegal. It was error for the court to go into a settlement of the accounts between Alexander Watson and executor. The notice was to settle the estate. Watson in a proper court may have successfully resisted a recovery of the claims due McClanahan.


PECK, contra.

The plaintiffs in error cannot set up the usury in this case, even if the contract is obnoxious to that objection, because usury is a personal privilege for the benefit of the borrower, which he may waive, and if he does, no one else can take advantage of it. Cook & Kornegay v. Dyer, 3 Ala. R. 643. Here the testatrix, by her will, recognizes the agreement between herself and the defendant in error, and expressly directs it to be carried into effect. If in this case the estate had been insolvent, and consequently insufficient to have paid the $200 mentioned in the agreement, with the 20 per cent., and all the other creditors of the testator, then, it may be, the creditors might have effectually resisted the payment of the 20 per cent., but certainly a legatee whose only claim is under the will, cannot object that the testator had not the right to direct this agreement to be carried into effect.


COLLIER, C. J.—In Powell, et al. v. Powell, 10 Ala. R.

900, it is said, "the allowance of compensation to executors and administrators to a reasonable extent, is warranted by constant practice, and it ought not to be refused, except in cases of wilful default or gross negligence, by which loss to the estate has been the consequence. Nothing of that kind is made to appear in this case, and therefore commissions were properly allowed." In Steele v. Knox, Id. 608, it was held that objections to the account filed by an administrator, may be made at the final settlement since the passage of the act of 1843; and "it is not necessary they should be in writing, but if either party wishes to have the decision of the court thereon reviewed, it will be necessary to spread them out upon the record, together with the decision of the court upon them." No exception seems to have been taken in the case at bar to the items of the executor's account which are supposed to embrace a charge for services and commissions; nor are there any facts disclosed in the record which would warrant the inference that the allowance was unreasonable in amount, or in itself improper. We cannot then assume that the sum allowed is disproportioned to the services rendered, or that it was not shown to the court that the charge does not embrace an expenditure of money by the executor in collecting and taking care of the assets. In this posture of the case, there is nothing of which error in respect to this matter can be predicated in the decree of the orphans' court.

The foregoing remarks are perhaps not inapplicable to the objection that Alexander Watson's share of the testatrix's estate was permitted to be paid by claims which the executor had purchased against him. The decree affirms that these were obtained by the executor with the assent of Watson, and under an express agreement that they should be allowed as a payment. This we must take to be true, as there was no exception to the ruling of the court showing the reverse. If the money had been paid to the legatee himself, it is conceded that it would have been good, and we can conceive of no difference in principle where the payment is made to his creditor by his direction or consent. Such, it must be assumed, is the fact in the present case, and the credit was therefore properly allowed.

The only question which appears to have been litigated in the orphans' court is, whether the executor was entitled to twenty *per cent. per annum* upon the two hundred dollars lent by him to the testatrix. The testatrix, by a writing under seal, acknowledged that she had received of the executor the sum of two hundred dollars, and promised to pay it, if convenient, during her life, but if she should fail to pay it, she directs her executor, &c., on the death of herself and her brother John, to pay the same, with the addition of twenty *per cent. per annum* added. This is not an absolute undertaking to pay more than the legal rate of interest; for it is expressly stipulated, the borrower may discharge the debt by paying the sum advanced to her, and the additional sum is only demandable of her executors, &c., in the event of her death without returning the money. To constitute usury, it is said the obligation to pay more than the legal rate of interest, must be absolute on the face of the transaction. Moore v. Hylton, et al. 1 Dev. Eq. Rep. 429. So a contract to pay a larger sum at a future day, upon non-payment of the sum agreed upon a prior day, is not usurious; but the increased sum shall be considered as a penalty, against which a court of equity ought to relieve, upon compensation being made; and that compensation is legal interest, unless some specific damage is shown. Winslow v. Dawson, 1 Wash. Rep. 119; Pollard v. Baylors, et al. 6 Munf. Rep. 433. The question whether a contract is usurious or not, is to be decided with reference to the time when it was entered into; if it was then legal, it cannot be made usurious by subsequent events. Id.; Thompson v. Jones, 1 Stew. Rep. 556. The contract of the borrower in the present case was not for the unconditional payment of any rate of interest, but only contemplated the addition of twenty per cent. annually, if the sum borrowed was not returned in the lifetime of the borrower and her brother. The cases cited clearly *indicate* that the transaction was not usurious.

But conceding that if the obligation is alone looked to, it would constitute a case of usury, and the question then arises, whether the testatrix did not waive all objection to the performance of her contract founded on that ground, by the

clause of her will simultaneously made, in which she directs her executors, if the obligation is not paid before the death of herself and her brother John, to pay it "according to its terms." Whether it is competent for a party to diminish his estate to the prejudice of *bona fide* creditors by a direction in his will to pay usurious interest to one of whom he has borrowed money, is not the question before us. Alex. Watson does not interpose as a creditor, but merely as a legatee, and certainly does not occupy a more favorable position than the executor. He comes in only as a beneficiary of the testatrix's bounty, and the executor, if he cannot be regarded as a creditor, as it respects the interest, will not be less favored than a gratuitous legatee. In this view, the plaintiff in error cannot be heard to alledge usury in the transaction between the testatrix and her executor; for he was no party to it, nor does the mere fact that he is a legatee make him a *privy*, in the legal meaning of the term. It has been held that a contract is void for usury only as between the parties to it, or those who stand in the borrower's place as his representatives. Jackson v. Henry, 10 Johns. Rep. 185; Fenno, et al. v. Sayre & Converse, 3 Ala. R. 458. The obligor cannot set up usury in the contract between the obligee and his assignee. Littell v. Hord, Hard. Rep. 81. Nor can the purchaser of an equity avoid the mortgage because it is usurious. Green v. Kemp, 13 Mass. Rep. 515; Bridge v. Hubbard, 15 Id. 96. The statutes against usury were intended for the benefit of the borrower, and confer on him a personal privilege which he may waive; and if he waives the privilege, no one else can insist on the usury. Cook & Kornegay v. Dyer, 3 Ala. R. 643. These citations abundantly establish, that if the testatrix could have defeated the payment of her obligation, in whole or in part, for usury, it was competent for her to waive the defence, and a legatee under her will does not stand in a situation which entitles him to insist on it. He is not her representative— but merely a donee of what she has given to him. Her executor represents her; and in cases where a party dies intestate, an administrator is the representative as to the personalty, and the heirs as to real estate.

The will directs the obligation to be paid "according to its terms;" that is, if it is not paid in the lifetime of the testatrix and her brother John, the payee shall receive the money lent by him, with the addition of twenty per cent. There is no limitation as to the time up to which the twenty per cent. shall be added, and according to the interpretation in analagous cases, it must be calculated to the time of payment. The interest could not cease upon the death of the testatrix, for the contract contemplates not only that event, but also the death of her brother. It does not appear from the record that this latter event has occurred; unless it can be inferred from the fact, that certain property which the executor was directed to keep together until the brother's death, has been sold, and the additional fact, that the testator filed his accounts in the orphans' court for settlement.

Conceding the death of the brother previous to the first day of January, 1846, and still there is nothing to show that the interest should not have been calculated down to that day. Perhaps the executor may not previously have realized of the estate a sufficient sum, after paying other demands entitled to a preference, to extinguish the debt in question. Upon this point the bill of exceptions is entirely silent, and we can make no intendment against the decree of the orphans' court. If it had been shown that the executor was in funds, which he could have applied to pay himself before the 1st of January, 1846, from that time the interest should have ceased. In the condition of the record, it cannot be affirmed that there is error in the decree; and it is therefore affirmed.