IN THE

# COURT OF ERRORS AND APPEALS

OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

NOVEMBER TERM, 1878.

---

BRIDGET O'NEIL and others, appellants,

*v.*

EDMUND J. CLEVELAND and others, executors, &c.,
respondents.

One of two executors loaned moneys of the estate on bond and mortgage, reserving usury thereon and appropriating it to his own use. On foreclosure by the executors on· behalf of the estate,—*Held,* that such usury could be set up as a defence.

---

On appeal from a decree of the chancellor, reported in 2 *Stew.* 457.

---

NOTE.—Usury being a strictly personal defence, can be set up only by the immediate parties to the contract or their representatives, although the right to recover it may, it seems, be assigned. (*Brecken-ridge* v. *Churchill,* 3 *J. J. Marsh.* 13 ; see *American Mach. Co.'s Case,* 83 *Pa. St.* 198 ; *Low* v. *Pritchard,* 36 *Vt.* 183 ; *Meech* v. *Stoner,* 19 *N. Y.* 26.) Amongst others, the following cases illustrate this rule:

I. Strangers can derive no advantage. *Tyler on Usury,* 410 ; *Stanley* v. *Kempton,* 30 *Me.* 118 ; *Gwynn* v. *Lee,* 9 *Gill* 137 ; *Mordecai* v. *Stewart,* 37

18

O'Neil v. Cleveland.

*Mr. W. R. Wilson* for appellants.

*Mr. E. S. Atwater*, for respondents.

DALRIMPLE, J.

The bill in this case was filed to foreclose a mortgage. The defence is usury, under the statutes of this state. The face of the mortgage is $2,225, and was given for money borrowed, payable three years after the date of the mortgage, with interest payable semi-annually.

It is conceded that the borrower, in fact, received but $1,891.25, the deduction having been fifteen per cent. from the amount for which the mortgage was given. It appears that O'Neil, the mortgagor, requested one Davis to procure for him the loan. Davis applied to one of the executors of the estate of Cleveland, deceased, for the money, and was successful in his application. The executor who made the loan, acted in the transaction of the business without consultation with his co-executor, and, upon completion of the negotiation, gave to Davis a check, payable to Davis's order, for the $2,225 agreed for. This check was signed by the drawer, with the addition or description to his name of the

*Ga.* 364; *McArthur* v. *Schenck*, 31 *Wis.* 673; *Drake* v. *Chandler*, 18 *Gratt.* 909; *Lehman* v. *Marshall*, 47 *Ala.* 362; *Taylor* v. *Jackson*, 5 *Daly* 497; *Drake* v. *Lowry*, 14 *Iowa* 125.

II. Nor creditors by simple contract. *Graham* v. *Moore*, 7 *B. Mon.* 53; *Lee* v. *Fellowes*, 10 *B. Mon.* 117; *Mills* v. *Carnly*, 1 *Bosw.* 159; *Carow* v. *Kelly*, 59 *Barb.* 239; *Scott* v. *Nesbit*, 2 *Br. C. C.* 641; *Ware* v. *Horwood*, 14 *Ves.* 31; *Jarman's Case*, 4 *Dea. & Ch.* 393; *Smith* v. *Fisher*, 2 *Desauss.* 275; *Campbell* v. *Johnston*, 4 *Dana* 181; see, however, *Pope* v. *Solomons*, 36 *Ga.* 541; *Busby* v. *Finn*, 1 *Ohio St.* 409; *Union Bank* v. *Bell*, 14 *Ohio St.* 200; *Moffatt* v. *McDowall*, 1 *McCord's Ch.* 434. Creditors, after judgment and execution, have been deemed an exception, because of their liens (*Dix* v. *Van Wyck*, 2 *Hill* (*N. Y.*) 522; *Thompson* v. *Van Vechten*, 27 *N. Y.* 568; *Carow* v. *Kelly*, 59 *Barb.* 239; *Van Tassell* v. *Wood*, 12 *Hun* 388; *Nisbet* v. *Walker*, 4 *Ga.* 221; *Phillips* v. *Walker*, 48 *Ga.* 55; *Butler* v. *Myer*, 17 *Ind.* 77; *Swanson* v. *White*, 5 *Humph.* 373; *Brooke* v. *Morris*, 2 *Cin. Sup. Ct.* 528); but this has been denied elsewhere (*Pickett* v. *Pickett*, 2 *Hill Ch.* 470; *Good* v. *Grant*, 76 *Pa. St.* 52; *Baskins* v. *Calhoun*, 45 *Ala.* 582; *Carmichael* v. *Bodfish*, 32 *Iowa* 418; *Boughton* v. *Smith*, 26 *Barb.* 635; *Bensley* v. *Hornier*, 42 *Wis.* 631; *Estill* v. *Rodes*, 1 *B. Mon.* 314. See *Miners Trust Co.* v. *Roseberry*, 81 *Pa. St.* 309.)

O'Neil v. Cleveland.

words "executor of the estate of Joseph Cleveland, deceased."

Davis, from the amount of the check, retained for his own commissions in negotiating the loan, one per cent., being $22.25, and, in a very few days after the check was given to him, gave his own check for $311.50 to the executor who had acted in the business on behalf of the estate. The check from Davis to the executor was to the order of the latter in his individual name. In it no reference was made to the estate of which the drawee was executor, to the loan which had been made to O'Neil, or to any account or indebtedness in favor of the drawee against the drawer. The balance of the $2,225 was paid by Davis to or for the use of the mortgagor.

From the foregoing statement, it appears that the mortgagor received $1,891.25 only. The balance of the $2,225 was divided between Davis and the executor in the proportion of one-fifteenth to the former, and fourteen-fifteenths to the latter. Upon the transaction as thus disclosed, the defence of usury is based.

The complainants insist, in the first place, that if the alleged defence sufficiently appears in proof, the answer

---

III. Nor an endorser (the payee) after maturity. *Frank* v. *Long-street*, 44 *Ga.* 178.

IV. An accommodation endorser may avail himself of such defence. *Warren* v. *Crabtree*, 1 *Greenl.* 167 ; *Dunscomb* v. *Bunker*, 2 *Metc.* (*Mass.*) 8 ; *Weimer* v. *Shelton*, 7 *Mo.* 237 ; *Gray* v. *Brown*, 22 *Ala.* 262 ; *Receiver* v. *Wild*, 10 *Nat. Bk. Reg.* 568, 578 ; *Williams* v. *Storm*, 2 *Duer* 52 ; Contra, *Cady* v. *Goodnow*, 49 *Vt.* 400. Compare *Flemming* v. *Mulligan*, 2 *McCord* 173 ; *Dickerman* v. *Day*, 31 *Iowa* 444 ; *Simpson* v. *Fullenwider*, 10 *Ired.* 334 ; *Cleaden* v. *Webb*, 4 *Houst.* 473 ; *Casebeer* v. *Kalbfleisch*, 11 *Hun* 119 ; *Bly* v. *Second Nat. Bank*, 79 *Pa. St.* 453 ; *Cole* v. *Hills*, 44 *N. H.* 227.

V. A partner is bound by a partnership note, although his copartner may have given, or agreed to give, usury therewith. *Dillon* v. *McRae*, 40 *Ga.* 107 ; *Bowers* v. *Douglass*, 2 *Head* 376 ; *Hurd* v. *Haggerty*, 24 *Ill.* 171 ; *Jones* v. *Jackson*, 14 *Ala.* 186 ; see *Machinists Bank* v. *Krum*, 15 *Iowa* 49.

VI. A second mortgagee cannot raise such defence. The cases differ as to this. *Pritchett* v. *Mitchell*, 17 *Kan.* 355, refers to all the cases which precede it. See also *Warwick* v. *Dawes*, 11 *C. E. Gr.* 548 ; *Price's Appeal*, 84 *Pa. St.* 141.

O'Neil *v.* Cleveland.

is insufficient, in that it states that the usurious interest was reserved and taken by the complainants, whereas it appears that the transaction, whatever its legal character, was with one of the complainants only.

The evidence shows that there was but the one executor engaged in the business. His co-executor testifies that she left the whole matter to him and was in nowise engaged or concerned therein. Her precise words are : " I had nothing to do with the business; my son had charge of the transaction; I have no knowledge of the amount for which the mortgage was given." And again : " I am innocent of these things; know nothing about the matter." The making of the loan having been wholly confided by one co-executor to the other, who acted for both, I think the defendants were justified in answering that the loan was reserved and taken by the complainants. There is no evidence tending to show that the defendants were ever advised that the fact was otherwise. They had a right to state, in their answer, the transaction as it presented itself to them, and that was, that, on making the loan, the lenders reserved to themselves illegal interest. It does not appear that the borrower of the

VII. A legatee cannot set it up, in conflict with the direct provisions of the will. *Watson* v. *McClanahan,* 13 *Ala.* 57.

VIII. A devisee is entitled thereto. *Handley* v. *Cunningham,* 12 *Bush* 401 ; *Marsh* v. *House,* 13 *Hun* 126.

IX. Usury taken by a party is not subject to garnishment in his hands. *Ransom* v. *Hays,* 39 *Mo.* 445 ; *Boardman* v. *Roe,* 13 *Mass.* 104 ; *Barker* v. *Esty,* 19 *Vt.* 131.

X. An insolvent assignee or trustee for the benefit of creditors, may set up usury or sue for the penalty. *Beach* v. *Fulton Bank,* 3 *Wend.* 573 ; *Pratt* v. *Adams,* 7 *Paige* 639 ; *Pearsall* v. *Kingsland,* 3 *Edw. Ch.* 195 ; *Green* v. *Morse,* 4 *Barb.* 332 ; *Gray* v. *Bennett,* 3 *Metc.* (*Mass.*) 522 ; *Tamplin* v. *Wentworth,* 99 *Mass.* 63 ; *Corcoran* v. *Powers,* 6 *Ohio St.* 19 ; *Mallon* v. *Munson,* 2 *Handy* (*O.*) 97 ; see *Low* v. *Pritchard,* 36 *Vt.* 183 ; *Tooke* v. *Newman,* 75 *Ill.* 215 ; *Thomas* v. *Watson, Taney C. C.* 297 ; *Hope* v. *Smith,* 10 *Gratt.* 221 ; *Twynam* v. *Bingham,* 9 *U. C. Q. B.* 409.

XI. Also, a receiver. *Palen* v. *Johnson,* 46 *Barb.* 21, 50 *N. Y.* 49 ; see *Butterworth* v. *O'Brien,* 23 *N. Y.* 275 ; *Curtis* v. *Leavitt,* 15 *N. Y.* 85, 86.

XII. Also, an assignee in bankruptcy. *Bosanquett* v. *Dashwood, Cas. t. Talb.* 113 ; *ex parte Skip,* 2 *Ves.* 489 ; *Brandon* v. *Sands,* 2 *Ves.* 514; *Tiffany* v. *Boatman's Inst.,* 18 *Wall.* 375 ; *Moore* v. *Jones,* 23 *Vt.* 739 ; *in re*

O'Neil *v.* Cleveland.

money, prior to the execution of the mortgage, knew that there was any executor of the estate other than he with whom he was dealing, nor that the illegal interest was reserved or taken for the benefit of one executor more than another.

It is again said that there is a variance between the answer and proof, because the former alleges that the sum retained was fifteen per cent., whereas it appears that it was, at most, but fourteen per cent., Davis having retained one per cent. for his commissions. But the evidence shows that the contract was, that the borrower was to pay a bonus of fifteen per cent. True, it was made through Davis, but was with the lenders, and the proportions in which the amount retained was divided between them, is immaterial. The answer correctly states, that the illegal interest reserved was fifteen per cent. of the $2,225.

The contract, as proved, was simply that the borrower should pay fifteen per cent. for the use of the money beyond the legal interest. The complainants, therefore, fail in their contention on this point.

The complainants' next contention is, that there was no usury in fact. It is insisted that, the estate having advanced

---

*Prescott,* 5 *Biss.* 523; *Receiver* v. *Wild,* 10 *Nat. Bk. Reg.* 568; *Woolfolk* v. *Plant,* 46 *Ga.* 422; *Wheelock* v. *Lee,* 15 *Abb. Pr.* (*N. S.*) 24, 64 *N. Y.* 242; *Crocker* v. *First Nat. Bk.* 3 *Cent. L. J.* 527; *Wright* v. *First Nat. Bk.,* 6 *N. Y. Weekly Dig.* 543; *Williar* v. *Baltimore Ass'n,* 45 *Md.* 546; see, however, *Bromley* v. *Smith,* 2 *Biss.* 511; *Nichols* v. *Bellows,* 22 *Vt.* 581.

XIII. Also, bail to the action. *Anonymous,* 12 *Mod.* 493.

XIV. Also, a lunatic's trustees. *Lockwood* v. *Mitchell,* 7 *Ohio St.* 387.

XV. An attorney or agent is personally liable for the penalty, and it is no defence that the money belonged to another person ( *Wells* v. *Garland,* 2 *Va. Cas.* 471; *Owen* v. *Barrow,* 4 *Bos. & Pul.* 101; *Toole* v. *Stephen,* 4 *Leigh* 581; *Baxter* v. *Buck,* 10 *Vt.* 548; *Commonwealth* v. *Frost,* 5 *Mass.* 53; *Kimball* v. *Boston Athenæum,* 3 *Gray* 225, 231; *Reg.* v. *Walker,* 2 *Keb.* 531; *Wyllis* v. *Ault,* 46 *Iowa* 46; *Wilkes* v. *Coffield,* 3 *Hawks* 28); but in an action by the principal on the usurious instrument, the borrower may plead the usury taken by the agent (*Pearson* v. *Bailey,* 23 *Ala.* 537; see *Jones* v. *Herndon,* 7 *Ired.* 79; *Hogan* v. *Hensley,* 22 *Ark.* 413).

XVI. Usury taken by a *feme covert* is sufficient at common law to avoid the bond, but not to charge her husband *criminaliter. Barnet* v. *Tompkyns, Skin.* 348. How far usury in a mortgage executed by her affects her dower, see *Cain* v. ——, 36 *Ala.* 168; *Campbell* v. *Babcock,* 27

to the mortgagor's agent the whole amount for which the mortgage was given, the illegal receipt or retention of excessive interest, brokerage or commissions by the agent who effected the loan, cannot affect the principal. The rule upon this subject is clearly enunciated by this court in the case of *Muir* v. *Savings Bank*, 1 *C. E. Gr.* 537. It is, "If an agent, in making a loan of money, accept from the borrower a bonus beyond the legal rate of interest, such act of the agent will not render the contract usurious if the bonus was taken without the knowledge of the principal and was not received by him."

The effort, on the part of the complainants, seems to be to induce the court to believe that, by arrangement between O'Neil and Davis, the latter was to retain for his commissions fifteen per cent. of the $2,225, and that, having secured to himself this amount as the outcome of his contract with O'Neil, he, without being under any sort of promise or obligation so to do, voluntarily surrendered fourteen-fifteenths of it to the person from whom he had received it. This does not appear to be the true character of the transaction. It appears from the evidence, that Davis, the agent, though first applied to by the borrower, acted for both parties.

---

*Wis.* 512; *Payne* v. *Burnham*, 62 *N. Y.* 69; *Kelley* v. *Lewis*, 4 *W. Va.* 456; *Norwood* v. *Morrow*, 4 *Dev. & Bat.* 442.

XVII. A sheriff or constable exacting usury from an execution debtor, is liable for the penalty. *Dowell* v. *Vannoy*, 3 *Dev.* 43 [see *Wright* v. *McGibbon*, 2 *Dev. & Bat.* 474]; *Wright* v. *Elliott*, 1 *Stew.* (*Ala.*) 391.

XVIII. A guardian is individually liable for usury taken on investments of her ward's money. *Stone* v. *McConnell*, 1 *Duv.* 54; see *Beasley* v. *Watson*, 41 *Ala.* 234.

XIX. The liability of an executor or administrator is shown in the following cases: In *Heasley* v. *Dunn*, 5 *B. Mon.* 145, an administrator exacted and received usury on a note payable to his intestate.—*Held*, that he was personally liable to the payers of the note, in an action of *assumpsit* to recover the usury, notwithstanding he had accounted to the estate for such usury. Also *Proctor* v. *Terrill*, 8 *B. Mon.* 451.

In *Heath* v. *Cook*, 7 *Allen* 59, an executor foreclosed a mortgage of his testator, which, without his knowledge, was usurious. The mortgagors paid off the mortgage to him, and he accounted therefor.—*Held*, that an action for the penalty for taking usury could not be maintained by the mortgagors against the executor, if he received the amount *inno-*

O'Neil v. Cleveland.

Though the reservation of illegal interest is directly charged, by way of defence, in the answer, and both executors have been sworn and examined as witnesses in the case, it is not denied by either of them, nor by Davis, who was also a witness in the case, that there was an arrangement or understanding prior to the completion of the negotiation for the money, that the borrower was to pay, for the use of it, a bonus beyond the legal interest. Was it to be paid to Davis or to his principal? The evidence of Davis very satisfactorily settles this point. He says: "This fifteen per cent. was for getting the money; Mr. O'Neil couldn't get the money anywhere; he would give it, and was glad to get it; I don't think that was pay for my services in getting the money; don't think I would charge anybody fifteen per cent. to get the money." The repayment so promptly of the fourteen per cent. to the executor, in connection with the evidence of Davis just quoted, and with all the other facts and circumstances of the case, clearly shows that the money was loaned on the agreement that fifteen per cent. should be reserved for the use of the person or persons making the loan.

---

cently. See *Ossipee* v. *Gafney*, 56 *N. H.* 352, to the same effect. Compare *Massey* v. *Massey*, 2 *Hill's Ch.* 492 ; *Ellis* v. *Warnes*, Mo. 752.

In *Wells* v. *Chapman*, 4 *Sand. Ch.* 313, 13 *Barb.* 561, trustees having *paid* usury, were deemed capable of waiving the penalty for the benefit of the estate.

In *Steele* v. *Franklin*, 5 *N. H.* 376, an administratrix took up an usurious note given to her intestate, by taking another note to herself for the amount, which also included further usury.—*Held*, that the mere substitution of the latter note was no defence to the usury of the first one, and that she must also deduct from her own note the penalty for usury in that state, three times the sum which she herself had exacted.

In *McCoy* v. *Stranathan*, 24 *Ohio St.* 486, W. and J. were the executors and legatees of S., and as such exacted usury from S.'s debtor, who discharged his obligation by a new note to W., which was taken by W. on account of his legacy. In a suit thereon—*Held*, that the debtor could not set up the usury, although it had been received by W. as executor.

In *Ewing* v. *Griswold*, 43 *Vt.* 400, it was held that a defendant who had paid usury to an executor on his testator's note, could set off such usury in an action by the executor thereon.

In *Norcum* v. *Lum*, 33 *Miss.* 299, a sole administrator loaned moneys of the estate at usurious rates.—*Held*, that the representatives of the

It is, however, insisted that the bonus, if any there was, was to be, and in point of fact was, paid to the executor who was engaged in making the loan, and his receipt of it does not affect the security in the hands of the executors of the estate, of which he is but one. In other words, the contention is, that the executor advanced the money in his official or representative capacity, and, as a private individual, for his own personal use and benefit, received part of it back, and therefore there can be no usury which can affect the estate for which he acted in making the loan, but for which he did not act when he took the bonus. I have not been able to perceive what, in legal principle, was the difference between the position of the lender when, on the 27th of May, he gave his check to Davis, and that which he occupied when he received Davis's check, on the 3d of June next following. Having regard to what is shown to have been the arrangement on which the loan was made, I am not aware of any principle of law or equity by which it can be held that the lender was, on the day he advanced the money, acting in his official or representative capacity, and that, on the day of the receipt of the bonus, he was but a private

borrower could enjoin a sale of lands under a deed of trust to secure such loans, and could deduct therefrom the excess.

In *Gordon* v. *West*, 8 *N. H.* 444, a testator held a deed of lands by way of security, for $4,000 loaned to J. and W. They agreed to give the executor $500 to accept the full amount of the debt and interest, and to reconvey the lands to them.—*Held*, on exception to his account, that the executor was entitled to retain the $500, whether it be deemed usury or a bonus.

In *Killen* v. *Sistrunk*, 7 *Ga.* 283, and *Beale* v. *Blake*, 10 *Ga.* 449, it was held that the legatees of an estate may call the executors to an account for usury received by them from investments of the funds of the estate. See also *Watson* v. *McClanahan*, 13 *Ala.* 57.

If usury has been taken by a decedent in his life-time, the right of recovery is, of course, against his estate (*Roberts* v. *Burton*, 27 *Vt.* 396; *Proctor* v. *Terrill*, 8 *B. Mon.* 451; *Little* v. *Riley*, 43 *N. H.* 109; *Brockenbrough* v. *Spindle*, 17 *Gratt.* 21; *Persons* v. *Hight*, 4 *Ga.* 474; *Bosanquett* v. *Dashwood, Cas. t. Talb.* 113); nor will such right be lost by a new note given to his representative. *Brent* v. *Tivebaugh*, 12 *B. Mon.* 87; *Smith* v. *Broyles*, 15 *B. Mon.* 461; *Little* v. *White*, 8 *N. H.* 276.

In *King* v. *Murray*, 6 *Ired.* 62, A., the legal owner of lands, leased them to B., who was indebted to A., and might redeem at any time for $1,000, B. meanwhile paying a rent larger than the interest on $1,000.

O'Neil *v.* Cleveland.

individual, whose receipt of the stipulated bonus was but as
the act of a stranger. If it were otherwise, a very simple
contrivance would, in very many cases, most effectually
enable parties to evade the usury laws. Looking, as we are
required to do, at the substance, and not simply at the form,
of the transaction, it appears to be, that the mortgagee bor-
rowed of the estate of Cleveland a certain amount, and
agreed to pay, for the use of it, a bonus beyond the legal
interest. It can make no difference that the lender, in the
first place, paid over the whole amount to the borrower, and
then received back, by another name, style, title or descrip-
tion, the agreed bonus. This is not the case of an agent
who, without the knowledge or consent of his principal,
secures to himself a bonus for effecting a loan. In the case
before us, the lender secured the illegal interest to himself,
and to say, as suggested, that it was but a commission for
making the loan, and not usury, does not, in my opinion,
under the circumstances, correctly characterize the case.

Nor do I see how the case is relieved of the defence of
usury by the fact that the lender was but one of the two
executors of the estate for which he acted. The funds
loaned were in his hands, and subject to his individual
check. His co-executor, it seems, committed to him the
entire business of making the investment. If he saw fit to
reserve to himself, either on his own private account or in
his representative character, illegal interest, the transaction
is tainted with usury, and the executors have no equitable
claim to hold the security free of such taint. They must
take it *cum onere.* Whether the executor who made the

---

In ejectment by the *heirs* of A. to recover the lands,—*Held,* that B.
was estopped, as against them, from setting up usury in the lease. See
*People* v. *Howlett,* 13 *Hun* 138 ; *Davis* v. *Cunningham,* 10 *Ired.* 156.

For the rule when usury has been *paid* by a decedent, and the proper
remedies thereon, see *Rankin* v. *Rankin,* 1 *Gratt.* 153 ; *Martin* v. *Lindsay,*
1 *Leigh* 499 ; *Pugh* v. *Cameron,* 11 *W. Va.* 523 ; *Edwards* v. *Skirving,* 1
*Brev.* 548 ; *Scott* v. *Nesbit,* 2 *Bro. C. C.* 641. If waived by a decedent it
cannot afterwards be set up by his representatives. *Berrington* v. *Evans,*
*Younge* 276.—Rep.

loan is entitled to retain, as against the estate, the bonus he received, is a question between him and those whom he represents.

The defendants, having succeeded in proving the defence of usury, are entitled to a reversal of the decree below. The complainants are entitled, under the statute, to a decree, without interest or costs, for the sum advanced ($2,225), less the fifteen per cent. retained.

Decree unanimously reversed.